UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANL KEIGLEY,

                Petitioner,               Case No. 1:20-cv-262

v.                                   Honorable Paul L. Maloney

RANDEE REWERTS,

                Respondent.

_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Danl Keigley is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan. On December 1, 2016, following a three-day jury trial in the Ottawa County Circuit Court, Petitioner was convicted of two counts of first-degree child abuse. On February 3, 2017, the court sentenced Petitioner to concurrent prison terms of 15 to 30 years for each count.

Petitioner alleges that he mailed his initial habeas petition to this Court on March 20, 2020. He raised five grounds for relief, as follows:

I.      Petitioner was denied a fair trial by the admission of injuries to the child that were not connected to [Petitioner] and were not relevant; the probative value was far outweighed by the overwhelmingly unfair prejudice, and the prejudice was exacerbated by the doctor's emotional and inappropriate testimony concerning a suspected "diagnosis" of torture.

II.    Petitioner was denied a fair trial by the introduction, over objection, of [a] shocking, gruesome and unfairly prejudicial photograph and the prejudice was exacerbated by the Doctor's emotional testimony concerning the photograph.

III.    The trial court reversibly erred by not instructing the jury on the lesser offense of 2nd degree child abuse. Alternatively, defense counsel rendered ineffective assistance where he failed to request that instruction.

IV.    Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his trial lawyer failed to (A)(i) rely on the available documents, witnesses and the trial testimony itself, and consult the available literature so as to garner the expertise necessary to effectively cross-examine Dr. Simms, thereby forgoing a substantial defense that [the victim] was not abused, or (ii) was abused by Hollie, (B) call an expert witness in support of this defense, and (C) do all of the above which, when considered cumulatively, prejudiced the Petitioner.

V.    Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of appellate counsel where his appellate lawyer did not raise argument I on direct appeal which establishes the good cause to overcome the procedural default.

(Pet., ECF No. 1, PageID.10, 12, 14, 16, 19.) Although Petitioner had exhausted his state court remedies with respect to the first three habeas grounds on direct appeal, he had not raised the last two grounds in the Michigan courts.

Petitioner immediately moved for a stay and asked the Court to hold these proceedings in abeyance to permit him to exhaust his state court remedies. (ECF No. 2.) The Court granted that relief.

Petitioner exhausted his state court remedies for the last two habeas grounds and then returned to this Court. He filed an amended petition, which raised the same five issues. (Am. Pet., ECF No. 8, PageID.189, 191, 193, 195, 198.) Respondent asserts that Petitioner's grounds for relief lack merit. (ECF No. 5.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the underlying facts as follows:

> Defendant brought NEM to the local hospital in Holland, Michigan, on the night of December 18, 2015, where NEM was found to have severe injuries. Among other concerns, NEM was unresponsive and had a body temperature of 94.3°F; a CT scan showed a large subdural hematoma with blood covering the entire right side of his brain severe enough to have caused a 6 millimeter shift in the center of his brain; and he was also discovered to have some fractures. He was transferred to the Helen DeVos Children's Hospital in Grand Rapids. Dr. Debra Simms, a child abuse pediatrician with extensive experience and qualifications, required a four and a half hour initial consultation to document all of NEM's various internal and external injuries, some of which had partially healed. Defendant contended that NEM had fallen down, which Dr. Simms concluded was simply not violent enough to explain NEM's injuries. In addition, a photograph taken a month previously, when shown to Dr. Simms, initially suggested to her that it "was some kind of Halloween stunt" because NEM's depicted injuries reflected the most severely battered child she had ever seen survive the experience. While there was a certain amount of conflicting testimony, a significant portion of it indicated that defendant had a lengthy history of beating NEM, while he contended that he simply "roughhoused" and at the most may have been a somewhat overzealous disciplinarian. The jury clearly did not agree.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.964.)[1]

Petitioner appealed the jury's verdict and his sentences, raising several issues—some, including habeas grounds I and II, in the brief filed with the assistance of counsel (ECF No. 12-10, PageID.996–1039), and several more, including habeas ground III, in a *pro per* supplemental

---

[1] "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Although Petitioner, in defending against the charges, contests the conclusions of Dr. Simms and the testimony of his housemates, he does not claim that the court's description of the evidence as it was introduced at trial is inaccurate. Indeed, Petitioner uses the same factual summary as the statement of facts in his motion for relief from judgment. (Pet'r's Mot. for Relief from J., ECF No. 17-3, PageID.1999.) Moreover, his habeas claims do not depend on a determination that the court of appeals' determinations of fact were unreasonable on the record.

brief (ECF No. 12-10, PageID.1046–1082). By opinion issued July 3, 2018, the Michigan Court of Appeals denied relief.

Petitioner then sought leave to appeal in the Michigan Supreme Court, raising the same issues he raised in the court of appeals. (ECF No. 12-11, PageID.1115–1195.) The supreme court denied leave by order entered December 21, 2018. (ECF No. 12-11, PageID.1114.)

Petitioner thereafter filed his initial habeas petition that included all five habeas grounds, even though only the first three had been exhausted. After the Court ordered a stay, Petitioner returned to the trial court and filed a motion for relief from judgment raising two issues, the same issues he raises here as habeas grounds IV and V. (ECF No. 17-3, PageID.1994–2042.) By opinion and order dated July 7, 2020, the trial court denied Petitioner's motion. (ECF No. 17-5, PageID.2044–2048.) Petitioner sought reconsideration. The court denied that motion by order signed September 4, 2020. (ECF No. 12-14, PageID.1882–1885.)

Petitioner filed applications for leave to appeal the trial court's decisions, first in the court of appeals and then in the supreme court. Those courts denied leave by orders entered February 24, 2021, and November 2, 2021, respectively. (Mich. Ct. App. Order, ECF No. 12-12, PageID.1276; Mich. Order, ECF No. 12-15, PageID.1931.)

Petitioner filed his amended petition, (ECF No. 8), as required by the Court's order granting the stay. Respondent filed his answer on June 17, 2022, along with most of the relevant state court record. Respondent asked the Court to permit the filing, under seal, of photographs depicting the victim's injuries. (ECF No. 13.) The Court granted that relief. (ECF No. 15.) Respondent then filed the balance of the state court record. (ECF Nos. 16, 17.) Petitioner filed his reply to the answer on July 20, 2022. (ECF No. 19.) Along with the response, Petitioner filed a motion for discovery, expansion of the record, an evidentiary hearing, and appointment of counsel.

## II. Petitioner's motion

Petitioner asks the Court to permit discovery of information from Petitioner's cell phone under Rule 6 of the Rules Governing § 2254 Proceedings. Under Rule 7, he seeks to expand the record to include the information he obtains through discovery. And, with that information in hand, he asks the Court to conduct an evidentiary hearing under Rule 8. Petitioner also asks the Court to appoint counsel, which would be required under Rule 8 if the Court determined an evidentiary hearing were necessary.

Petitioner's invitation to go beyond the state court record to decide his habeas issues is contrary to the legislative mandates of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

5

The state courts adjudicated each of Petitioner's claims on the merits. The merits of habeas ground I were decided by the Michigan Court of Appeals. (Mich. Ct. App. Op., ECF No. 12-10, PageID.965–966.) The merits of habeas grounds II and III were also decided by the Michigan Court of Appeals. (*Id*., PageID.966, 968.) The merits of habeas grounds IV and V were decided by the trial court. (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047–2048; Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 12-14, PageID.1883–1885.)[2]

Federal courts must give appropriate deference to the decisions of state courts on habeas review. For that reason, where the state courts have adjudicated a claim on the merits, the federal court is limited to the state court record in deciding a petitioner's habeas challenges. The habeas statute expressly states that limitation for challenges under § 2254(d)(2), which are claims the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim— . . . (2) resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." (emphasis added)). And the Supreme Court has held that review of challenges under § 2254(d)(1), regarding adjudications that "result[] in a decision that [is] contrary to, or an unreasonable application of, clearly established

---

[2] Habeas grounds IV and V were raised on Petitioner's motion for relief from judgment. The trial court resolved them on the merits and the appellate courts denied leave to appeal in form orders. Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). When a Michigan appellate court denies review of a claim using a summary order citing Mich. Ct. Rule 6.508(D), a federal court conducting habeas review must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the] claim." *Id*. at 291. Under *Guilmette*, the Court looks through the decisions of the Michigan Supreme Court and Michigan Court of Appeals to the decision of the state trial court.

Federal law"—are also limited to the state court record. *Cullen v. Pinholster*, 563 U.S. 170, 182–183 (2011).

Thus, this Court may not look outside the state court record to resolve Petitioner's habeas claims and Petitioner's motion seeking an evidentiary hearing is properly denied. *Stermer*, 959 F.3d at 721 ("[A] district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)." (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012))). Moreover, because the related requests to expand the record and allow discovery are made solely for the purpose of supplementing the record, they are properly denied as well.

Even if an evidentiary hearing were not barred under § 2254(d), it would be barred under § 2254(e)(2). That subsection provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> (A) the claim relies on—
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2). Petitioner's claims do not rely on "a new rule of constitutional law." Thus, he must establish that the factual predicate could not have been previously discovered through the exercise of due diligence. As explained below, he cannot make that showing.

7

Along with Petitioner's motion for relief from judgment, he submitted a screen shot, purportedly from his cell phone, that he claims establishes that he was not present at the time his housemates claim he inflicted the injuries on the victim during November:



(Exh. LL, ECF No. 12-13, PageID.1837.) The trial court was not convinced:

> The court will comment on exhibit LL, a google map. Defendant claims that this shows he was not at the home between 8:15 am and 3:48 pm on 11/13/15, the claimed time of the assault. However the map provided does not indicate who/what is being tracked and whether history has been deleted. It is also noted that 5 hours and 49 minutes is unaccounted—a scroll bar is next to this time period—suggestive of an incomplete record. Additionally, the primary fact witnesses, Hollie and

Olivia, testified to approximate dates of the November assault. (i.e., the assault happened "about" 3–4 days before the 11/16/15 photograph).

(Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047, n.20.)

The screen shot was sent by Petitioner's brother to Petitioner. It appears, therefore, that Petitioner effectively possesses—or at least possessed—the cell phone, which is all that is needed to generate the analytical evidence that he now seeks to develop through discovery or an evidentiary hearing. The fact that Petitioner was able to provide the Google map indicates that he could have himself developed the cell site location information to support his claim that the Google map was not altered and to prove that the map was retrieved from, and tracks, Petitioner's phone.[3] Put differently, Petitioner has failed to show that the "factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Without that showing, the Court is barred from holding an evidentiary hearing.

But even if Petitioner had demonstrated due diligence, he would not be entitled to a hearing because he cannot show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the appellant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). As the trial court explained, the housemates who testified that they witnessed Petitioner hitting the victim

---

[3] Indeed, after the trial court judge expressed concerns regarding the meaning of the Google map, Petitioner ultimately submitted a forensic report prepared at his request. (Digital Forensics Report, ECF No. 12-14, PageID.1887–1890.) It is noteworthy, however, that the number of the phone submitted—the phone that Petitioner contends was the source of the Google map—is not the same number from which Petitioner exchanged texts with Hollie on November 13, 2015. (*Id.*, PageID.1888 [#(904) 864-8688]; Holland Dep't of Public Safety Supp. Report, ECF No. 12-13, PageID.1848–1855 [#(616) 298-0590].) Petitioner and Hollie both testified that his phone number was 616-298-0590. (Trial Tr. II, ECF No. 12-5, PageID.851; Trial Tr. I, ECF No. 12-4, PageID.596.) It could be that Petitioner's phone has a new SIM card and a new number; but the record before this Court, including Exhibit LL and the forensic report, does not on its face support the position urged by Petitioner.

repeatedly in the days before the date the "gruesome photograph" was taken were not definitive as to the date the assaults occurred. (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047, n.20.) So, even if analysis of Petitioner's phone showed that the Google map tracked Petitioner's phone, that the map had not been altered, and that the map tracked Petitioner's whereabouts as well as the whereabouts of his phone, a reasonable factfinder could find that the assault occurred the day before or after November 13, 2015—or at a different time on November 13.[4]

For all of these reasons, the Court will deny Petitioner's request for an evidentiary hearing, as well as his requests to conduct discovery or expand the record.

Although the Court must appoint counsel if an evidentiary hearing is held, the Court is not barred from appointing counsel in the absence of an evidentiary hearing. Therefore, Petitioner's request to appoint counsel is, to a certain extent, independent of his other requests, or at least less directly related to them.

Indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court has considered the complexity of the issues and the procedural posture of the case. The assistance of counsel does not appear necessary to the proper presentation of Petitioner's position. Petitioner's motion for a court-appointed attorney will therefore be denied.

## III.   AEDPA Standard

As noted above, under the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

---

[4] The housemates were not entirely definitive with regard to the time either, even if the date were conclusively established. (Trial Tr. I, ECF No. 12-4, PageID.553–663.)

claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer*, 959 F.3d at 721.

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575

U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.

*Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal

quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160

F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v.

Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court

is not free to consider any possible factual source. The reviewing court "is limited to the record

that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180.

"If a review of the state court record shows that additional fact-finding was required under clearly

established federal law or that the state court's factual determination was unreasonable, the

requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on

its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.   Irrelevant injuries and emotional and prejudicial testimony (habeas ground I)

Petitioner contends that the trial court improperly admitted evidence of injuries that were not "connected" to Petitioner. Petitioner claims further that the prejudice caused by that irrelevant evidence was exacerbated by the prosecution expert's emotional testimony regarding the victim's injuries and her diagnosis of torture.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction." *Id*. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.

Petitioner refers the Court to pages 14 through 21 of his direct appeal brief. (Am. Pet., ECF No. 8, PageID.188.) Petitioner first argues that the evidence was inadmissible. He offers several theories to support that claim. He claims: (1) the evidence was irrelevant under Michigan Rule of Evidence 402, (Pet'r's Appeal Br., ECF No. 12-10, PageID.1019); (2) the evidence was more prejudicial than probative under Michigan Rule of Evidence 403, (*id*., PageID.1019–1020); (3) to

13

the extent the evidence of prior injuries was offered as "similar acts" evidence, it failed to meet the requirements of Rule 404(b), (*id.* PageID.1020); and (4) to the extent Dr. Simms' testimony regarding torture related to a mental health condition, she was unqualified to testify as an expert under Michigan Rule of Evidence 702 (*id.*, PageID.1022–1023).

An initial flaw in Petitioner's argument is that the Michigan Court of Appeals concluded that the evidence was relevant, it was not unduly prejudicial, that Rule 404(b) did not apply because there was no "similar acts" evidence, and that Dr. Simms was qualified to make the "torture" diagnosis:

> Defendant first argues that he was denied a fair trial by the admission of evidence that NEM had prior injuries and by Dr. Simms's testimony that she believed NEM may possibly have been "tortured." We disagree.
>
> The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).
>
> Dr. Simms made it clear during her testimony that she had no way to know when or how the prior injuries occurred. However, she also testified extensively to how rapidly NEM healed from the injuries that had clearly just been inflicted. Even if there was no direct evidence of how recently the healing injuries had been inflicted, it is strongly inferred that they must have been inflicted recently—in other words, well within the timeframe of defendant's presence in NEM's life. By *everyone's* testimony, nobody other than defendant physically disciplined NEM. The gravamen of defendant's defense regarding the charge arising out of the November injuries was that NEM sustained his injuries falling down the stairs. Critically, the older injuries were *healing*, not *healed*. The injuries in the process of healing were highly relevant to the prosecution's case that NEM's apparent injuries in November were real injuries rather than stage makeup, especially in light of defendant's implication that the person who provided the photograph may have been prevaricating. While the evidence was clearly prejudicial, as most evidence is, it was not unduly prejudicial in light of the nature of the allegations and its relevance to the charges.
>
> Dr. Simms confirmed that "torture" was a recognized medical reference code. According to the 2018 edition of the International Classification of Diseases, Tenth Revision, Clinical Modification (ICD-10-CM), "victim of torture" is code Z65.4, under "victim of crime and terrorism," which is under "problems related to

14

other psychosocial circumstances," which is under "persons with potential health hazards related to socioeconomic and psychosocial circumstances," which is under Chapter 21, "factors influencing health status and contact with health services." Chapter 21 notes that "Z codes represent reasons for encounters" and do not stand alone, and, *inter alia*, might arise "when some circumstance or problem is present which influences the person's health status but is not in itself a current illness or injury." Defendant offers no reason why Dr. Simms needed to be a psychiatrist to make the diagnosis other than a vague reference to "the literature," and in any event, Dr. Simms noted that she had involved a child psychiatrist and psychologist in her medical team.

The word "torture" certainly carries emotional weight. However, in light of Dr. Simms's testimony that NEM was the most battered living child she had ever seen in twenty years of specializing in child abuse and was enough to give her nightmares, it does not seem particularly inappropriate or even noticeable. The trial court properly held that whether the word was admissible should turn on whether it was an actual medical diagnosis, which the testimony emphasized it was, as opposed to a personal opinion. Defendant raises MRE 404(b), but we are at a loss to understand its relevance here. The diagnosis of possible torture was directly relevant to whether defendant committed first-degree child abuse, and in the context of the rest of the case, it does not seem significantly more prejudicial than probative.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.965–966 (emphasis in original) (footnote omitted).)

Each determination that the evidence was admissible under state law conclusively resolves the issue. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' determinations that the testimony was admissible under the applicable state rules are, therefore, axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due

process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

This Court may not grant relief simply because it might have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner cites Supreme Court cases that question the constitutional propriety of convictions based on inadmissible evidence or unduly prejudicial evidence, but the state appellate court determined the evidence was admissible under state law and was not unduly prejudicial under state law. Plaintiff claims that the Supreme Court has reached a different determination with regard to the constitutionality of "similar acts" evidence, citing *Old Chief v. United States*, 519 U.S. 172 (1997). (Pet'r's Appeal Br., ECF No. 12-10, PageID.1019.) But *Old Chief* was not a case about due process. Rather, in *Old Chief*, the Supreme Court addressed whether prior acts testimony is permissible under the Federal Rules of Evidence. *Bugh*, 329 F.3d at 513. The Supreme Court did not address the issue in constitutional terms. *Id*.; *Old Chief*, 519 U.S. at 174–186.

Petitioner has failed to satisfy his burden to show that the state court's determination that the evidence was admissible is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this claim.

### B.    The photograph (habeas ground II)

Petitioner sought to exclude a particular photograph of his victim that showed extensive bruising to the child's face. (Pet'r's Appeal Br., ECF No. 12-10, PageID.1024.) The trial court admitted the photograph.[5] Then, Dr. Simms testified about the photograph as follows:

> And I have to honestly tell you it's one of the most horrible photographs I've ever seen. It showed this child and I honestly had trouble believing this and asked if this was some kind of Halloween stunt. Is this makeup? Because I think I shared with you, I have never seen a child so battered living. I've seen – unfortunately, in my job I see children that are deceased and on the autopsy table, but the photograph of him sitting on that rocking horse just, honestly, it gave me nightmares.

(Trial Tr. II, ECF No. 12-5, PageID.762.)[6]

Petitioner argued that the photograph was unduly prejudicial and intended only to inflame the passions of the jury. The court of appeals disagreed:

> NEM's condition in December, in other words relevant to the second charge of first-degree child abuse, was well documented. The photograph was the only direct evidence of NEM's condition in November; in other words, relevant to the *first* charge of first-degree child abuse. First-degree child abuse requires proof that a defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." MCL 750.136b(2). In view of the evidence that an active child is quite simply expected to suffer some bruising, and possibly even some broken bones, the sheer severity of NEM's injuries is highly and directly relevant to whether he did actually suffer first-degree child abuse, as opposed to, say, mere grossly incompetent parenting or overzealous discipline. Defendant's apparent theory of the case was that NEM had in fact been injured in that time frame, but was injured falling down the stairs or falling off some shelving, and did not appear to be in serious pain. The medical evidence of healing fractures suggested

---

[5] The photograph is included in this Court's record under seal. (ECF No. 16.)

[6] The court of appeals addressed Dr. Simms' testimony regarding the photograph as part of its analysis of the admissibility of Dr. Simms' testimony regarding prior injuries and torture. *See supra* Part IV.A.

otherwise; the photograph depicting how he actually looked was enormously important evidence that more than merely suggested otherwise.

Defendant attempts to argue that a gruesome photograph is really not necessary to establish any element of the charges in this case. Defendant argues that in a case where the only issue was whether a defendant had participated in a murder, or whether it was first- or second-degree murder, showing the jury brutal photographs of the victims was probative of nothing relevant and tended to inflame and distract the jurors. *People v Wallach*, 110 Mich App 37, 63–67; 312 NW2d 387 (1981), vacated and remanded on other grounds 417 Mich 937 (1983). That case and defendant's argument are wholly irrelevant. The photograph here was directly necessary to establish the essential elements of one of the charged crimes, as well as to establish NEM's condition in a way that could not adequately be described. While certainly highly prejudicial, its probative value was not substantially outweighed by the danger of unfair prejudice, and the fact that it was gruesome does not automatically require its exclusion, even if it could be adequately described through testimony. *People v Mills*, 450 Mich 61, 76-78; 76; 537 NW2d 909 (1995), modified on other grounds 450 Mich 1212 (1995).

(Mich. Ct. App. Op., ECF No. 12-10, PageID.966 (emphasis in original).)

Petitioner was not denied a fundamentally fair trial by the admission of photographs of the victim's injuries. Without a doubt, the photograph was troubling, but the court of appeals identified multiple reasons why the photograph was relevant and probative. Petitioner does not point to any clearly established federal law holding that the admission of gruesome, but relevant, photographs violates due process.

Indeed, the Sixth Circuit has found no due process violation in even more extreme cases involving photographs of murder victims when there is a legitimate reason for demonstrating the nature of the injuries. *See, e.g.*, *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (holding that admission of photographs depicting murder victim's severed head, her severed head held near her torso and severed breast, and her torso with her severed head and severed breast replaced on torso, did not deprive defendant of fair trial, and thus did not warrant federal habeas relief); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) ("The Ohio Supreme Court directly addressed this evidentiary issue, concluding that the multiple photographs 'were introduced during the coroner's

18

testimony to illustrate the testimony,' that '[e]ach photograph presents a different perspective of the victim,' and that the photographs 'were used to illustrate' the nature of the encounter that immediately preceded Skiba's death." (citation omitted)); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that, "although the photographs were gruesome, they were highly probative"). "Evidence is not unfairly prejudicial simply because it is gruesome or disturbing." *United States v. Boyd*, 640 F.3d 657, 667–68 (6th Cir. 2011).

Petitioner has failed to demonstrate that the court of appeals' rejection of this challenge was contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on this claim.

### C.    Failure to instruct the jury on the lesser offense of second-degree child abuse (habeas ground III)

Petitioner was convicted of first-degree child abuse. "A person is guilty of child abuse in the first-degree if the person knowingly or intentionally causes serious physical harm or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2). Petitioner contends that the trial court should have also instructed the jury on the lesser offense of second-degree child abuse. "A person is guilty of child abuse in the second-degree . . . if the person's reckless act causes serious physical harm or serious mental harm to a child." Mich. Comp. Laws § 750.136b(3).[7]

Second-degree child abuse is not categorically a lesser-included offense of first-degree child abuse. Nonetheless, the Michigan appellate courts have concluded that "the variant[] of second-degree child abuse in . . . MCL 750.136b(3)(a) (involving a reckless act) [is a] necessarily included lesser offense[] of first-degree child abuse." *People v. Burks*, 864 N.W.2d 580, 588

---

[7] There are other acts that might constitute second-degree child abuse, but Petitioner focuses on the possibility that the jury might have found that his actions were reckless rather than intentional. (Pet'r's Pro Per Supp. Appeal Br., ECF No. 12-10, PageID.1061–1062.)

(Mich. Ct. App. 2014) *vacated in other part*, 873 N.W.2d 101 (Mich. 2016). Where a criminal defendant is charged with a crime that has different degrees, the State of Michigan, by statute, permits the jury to "find the accused not guilty of the offense in the degree charged" but instead to "find the accused . . . guilty of a degree of that offense inferior to that charged . . . ." Mich. Comp. Laws § 768.32(1).

But the fact that a lesser included offense instruction is permitted does not mean that it is required. Such an instruction is not required where the evidence "tends only to prove the greater" offense. *People v. Cornell*, 646 N.W.2d 335, 356 (Mich. 2002) (internal quotation marks omitted). And, as noted by the court of appeals in Petitioner's case, the instruction must be requested. That requirement was specifically noted by the Michigan Supreme Court in *People v. Stephens*, 330 N.W.2d 675, 680 (Mich. 1982). Although *Cornell* overruled *Stephens* to the extent the two decisions were inconsistent, *Cornell*, 646 N.W.2d at 140 ("To the extent that . . . Stephens . . . conflict[s] with our holding today, [it is] overruled."), the two decisions did not conflict with regard to the requirement of a request. The rule established by the *Cornell* court applies only to "a requested instruction." *Id*. at 139.

The Michigan Court of Appeals determined that, as a matter of state law, the trial court was not required to *sua sponte* instruct the jury on the lesser included offense in the absence of a request to do so. (Mich. Ct. App. Op., ECF No. 12-10, PageID.968.) That determination binds this Court. Therefore, the instructions omitting the second-degree child abuse instruction were not defective under state law.

Moreover, the trial court was not constitutionally required to instruct on the lesser offense under clearly established federal law. *See, e.g.*, *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) ("The Supreme Court, however, has never held that the Due Process Clause requires

instructing the jury on a lesser included offense in a non-capital case."); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases.").

Perhaps anticipating that result, as an alternative to the claim that the trial court erred, Petitioner contends that his counsel erred because he did not request the instruction. Expressed in constitutional terms, Petitioner claims his counsel rendered ineffective assistance.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at

105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (citing *Harrington*, 562 U.S. at 102) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . .").

The Michigan Court of Appeals applied a standard that was, effectively, the same as the *Strickland* standard: "[D]efendant has the burden of overcoming the presumption of effective performance and demonstrating that the outcome of the proceeding would have differed or that the proceedings were fundamentally unfair." (Mich. Ct. App. Op., ECF No. 12-10, PageID.968.)[8] Applying that standard, the appellate court concluded that counsel's decision to forego a request for the second-degree child abuse instruction was a reasonable "all or nothing" strategy. (Mich. Ct. App. Op., ECF No. 12-10, PageID.968.)

Given the double deference owed, it is not for the Court to decide whether counsel's "all or nothing" strategy was reasonable. Instead, this Court must determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562

---

[8] The court of appeals cited *People v. Lockett*, 814 N.W.2d 295 (Mich. Ct. App. 2012) as the source of the standard. *Lockett*, in turn, described the standard as follows:

> To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

*Lockett*, 814 N.W.2d at 307. This is functionally identical to the *Strickland* standard described above.

U.S. at 105. Thus, this Court is considering the state appellate court's assessment of counsel's action, not counsel's action.[9]

"All or nothing" suggests only two options. Petitioner, however, now contends that his counsel should have pursued a third option: requesting a lesser offense instruction. In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court explained how that approach might operate to the benefit of a criminal defendant:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212–13; *see also Beck v. Alabama*, 427 U.S. 625, 634 (1980) (noting that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard").

---

[9] Because Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy, he can only prevail if he shows that the challenged action **cannot** be considered sound trial strategy. Thus, as the *Harrington* Court noted, "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. If the Michigan Court of Appeals conceived of a sound strategy that includes the challenged action, the matter is resolved.

The third option urged by Petitioner is, theoretically, a legitimate strategy, but it is not the only legitimate strategy. In *Kelly v. Lazaroff*, 846 F.3d 819 (6th Cir. 2017), Kelly's trial counsel also did not request instructions on lesser offenses. The Sixth Circuit conducted a *de novo* review of the objective reasonableness of counsel's "all or nothing" decision to assess whether appellate counsel should have raised the issue. The court concluded that counsel's decision to pursue a "'high risk, high reward' . . .'all or nothing' defense . . . did not fall below the bar of professionally competent assistance." *Kelly*, 846 F.3d at 830. That is the same reasoning adopted by the Michigan Court of Appeals. Petitioner has failed to demonstrate that the appellate court's determination is contrary to, or an unreasonable application of, *Strickland*. Thus, he is not entitled to habeas relief.

Moreover, if this Court were called upon to assess the reasonableness of counsel's decision, it would reach the same conclusion as the court of appeals. The choice between "all or nothing" or the "third option" does not exist in a vacuum. Petitioner was charged with two specific instances of child abuse. One that occurred during November of 2015, as evidenced by the gruesome photograph, and one that occurred during December of 2015, that resulted in the victim's hospitalization and, eventually, removal from Petitioner's home. Petitioner's defense to the first instance was that he was not there when the child was hurt; he only heard after the fact that the child had fallen down the stairs.

Petitioner's testimony stood in stark contrast to two other witnesses that indicated Petitioner had struck the victim, and one witness indicating that Petitioner had struck the child in the face as many as 30 times. There was no evidence to suggest that Petitioner's repeated striking of the victim was anything but intentional. And if Petitioner was not even there when the injuries occurred, there could be no evidence that the injuries were caused by Petitioner's recklessness.

Thus, at least with regard to the first instance, "all or nothing" was the only approach; there was no third option.

Petitioner acknowledged that he was present when the victim suffered the injuries in December. But Petitioner testified that the victim fell, either as he came off the bed to use the toilet or immediately after he came off the bed. According to Petitioner's testimony, there was nothing to suggest that the fall was the result of an intentional act or a reckless act by Petitioner. Petitioner's culpability for the injuries, and the determination that the injuries were caused intentionally were inferred from the circumstances, particularly Petitioner's presence with the victim at the time of the injuries and the nature and severity of the injuries. If counsel had requested the instruction, it appears unlikely that the court would have read it because there was no evidence that tended to prove the lesser offense.

In light of the testimony at trial—particularly Petitioner's testimony—an "all or nothing" strategy was really the only viable option. It was certainly reasonable under the circumstances.

### D.      Ineffective assistance of trial counsel (habeas ground IV)

Petitioner's other ineffective assistance of trial counsel claims were raised in his motion for relief from judgment. In denying Petitioner's motion, the trial court applied the *Strickland* standard. (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2045–2046.) Thus, the state court's resolution cannot be questioned for applying the wrong standard. Instead, Petitioner must show that the court applied the standard unreasonably.

Petitioner argues that his trial counsel acted in a professionally unreasonable manner when: (1) he failed to consult the available literature so that he could effectively cross-examine Dr. Simms; (2) he failed to appropriately impeach the testimony of Olivia McPeak and Hollie DeWitt with regard to Defendant's involvement in the November incident; and (3) he failed to consult

more than one expert to challenge Dr. Simms' opinions. The trial court flatly rejected Petitioner's arguments.

The trial court noted that trial counsel filed a motion for appointment of a medical expert witness to assist counsel in preparing his defense. Petitioner hired Dr. Marcus McGraw, a pediatrician who specializes in child abuse and practices at William Beaumont Hospital in Royal Oak. (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047.) Petitioner believed his expert was not sufficiently critical of Dr. Simms' opinion. Petitioner's appellate counsel also hired an expert. In an email to Petitioner she stated:

> Your trial attorney consulted with an expert before trial, and I consulted with an independent expert who basically agreed with the conclusions of the previous expert. He (the expert I consulted) is familiar with the expert hired by your trial attorney and he stated that if that expert were able to testify on your behalf, he would have done so.

(Pet'r's Mot. for Relief from J., Exh. PP, ECF No. 12-13, PageID.1870.) The trial court opined that the agreement of all of these experts essentially "eviscerates defendant's position" regarding the effectiveness of his counsel with regard to impeaching Dr. Simms' testimony and failing to consult with more experts. The trial court concluded that "[t]he Sixth Amendment does not require that trial (or appellate) counsel 'shop for experts until finding one who will offer favorable testimony.'" (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2048 (quoting *People v. Ackley*, 870 N.W.2d 858 (2015)).)[10]

The evidence presented to the state court includes the statements of two independent experts who concluded Dr. Simms was correct in concluding that the medical evidence supported

---

[10] Although the state court relied on state authority, federal courts have reached the same conclusion. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 745 n.10 (5th Cir. 2000) ("[T]he Sixth Amendment does not require counsel to continue searching until they find an expert willing to provide more beneficial testimony on their behalf.").

a determination that the child was the victim of intentional abuse.[11] Petitioner did not present any evidence that there is, or was, an expert willing to testify that Dr. Simms' conclusion was wrong. Instead, Petitioner compiled and presented a series of articles—principally law review and internet articles, but a few that might be peer-reviewed medical articles—that he claims would have provided fodder to attack Dr. Simms' analysis.[12]

An examination of the attacks Petitioner claims counsel could have mounted is revealing. For example, Petitioner claims that counsel could have impeached Simms' opinion that the victim had "an equivocal healing fracture of the proximal left humerus," with the statement of the doctors from the hospital that transferred the victim to Dr. Simms' hospital that the "left proximal humerus fracture" appeared "essentially healed." (Pet'r's Br., ECF No. 17-3, PageID.2005.) The Court fails to discern the compelling distinction between the two.

Similarly, Petitioner offers Dr. Ophoven's textbook recommendation to conduct follow-up skeletal surveys 10 to 14 days after admission studies to assess healing to estimate the timing of fractures. Petitioner criticizes Dr. Simms' interval of either 16 days or three weeks; but he does not explain why Dr. Simms could not estimate timing because of the longer interval. (*Id.*, PageID.2005–2007.) Petitioner contends his counsel could have impeached Dr. Simms' testimony that the repeated slapping of the victim might have produced the bruising shown in the

---

[11] In fact, Petitioner himself seems to have conceded the reasonableness of Dr. Simms' opinion that the victim's injuries were the result of abuse because he contends that the victim was abused by Hollie. (Am. Pet., ECF No. 8, PageID.195.)

[12] There are chapters or excerpts from what appears to be a textbook authored by Dr. Janice Ophoven, a physician who testifies frequently regarding causes of injury and abuse, (ECF No. 12-12, PageID.1418–1420, 1488–1489, 1515, 1540–1557, 1570, 1650–1651, 1728–1729, 1872, 1874); an article by Dr. Alexandra R. Paul in the open access, peer-reviewed journal Translational Pediatrics, (ECF No. 12-12, PageID.1422–1434); and a chapter titled "Failure to Thrive," authored by Dr. John Olsson, apparently from a textbook, (ECF No. 12-12, PageID.1565–1568). The scores of other pages, however, are from internet articles or legal journals.

"gruesome photo" by relying on the textbooks or legal articles to point out that "slapping can leave a handprint type of pattern." (*Id.*, PageID.2014–2015.) The absence of handprints, Petitioner suggests, would have discredited Simms' testimony.

Petitioner proceeds to nitpick his way through the victim's medical record and the testimony using the textbook information, internet articles, and legal journals. Petitioner essentially serves as his own expert. Petitioner's selective and slanted reading of the articles he attaches would have provided some more questions for Dr. Simms, but Petitioner offers nothing to show that the answers to those questions would have augured to his benefit. As the trial court judge pointed out, Petitioner "fails to demonstrate a nex[u]s between this literature and a helpful expert opinion." (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047.)

Moreover, the trial court noted that "simply attaching articles to a motion and declaring that these articles would have impeached a witness is placing the cart in front of the horse." (*Id.*, n.19.) Under the state rules of evidence, learned treatises may be used for impeachment of an expert, but they must first be established as reliable authorities by the witness, another expert, or by judicial notice. Mich. R. Evid. 707; (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2047). Dr. Simms' crediting of the "law review articles, Wikipedia entries, and other lawyer generated articles" would be unlikely. *Id.* The court was clearly not going to take judicial notice that such materials were reliable. And the independent experts consulted by trial counsel and appellate counsel concurred with Dr. Simms' opinion that the injuries were indicative of abuse; therefore, it is highly improbable medical experts generally would find that the sources mentioned by the trial court were reliable authorities sufficient to impeach Dr. Simms' testimony.

In short, Petitioner has failed to demonstrate that the trial court's determination that trial counsel's conduct was professionally reasonable was contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel.

Petitioner's claim that counsel rendered ineffective assistance because he failed to properly impeach the testimony of Petitioner's housemates fares no better. The crux of Petitioner's argument is that counsel should have impeached the testimony of Hollie and Olivia regarding Petitioner's beating of the victim by establishing that Petitioner's phone was not in the home at the described time of the beatings on November 13. For all of the reasons stated above,[13] Petitioner has failed to establish that counsel's decision to forego inquiry into the whereabouts of Petitioner's phone on November 13, 2015, was professionally unreasonable or prejudicial.

Petitioner also contends that trial counsel could have impeached Olivia because she told police that she had observed Petitioner smacking the victim with an open hand with every step, but testified at trial that Petitioner had hit the victim in the head with a folded belt with every step. Petitioner presumes that Olivia was describing the same event both times, but there is nothing in the police report to suggest that is the case. At trial, Olivia testified that the belt-beating occurred 3 or 4 days before the "gruesome photograph." (Trial Tr. I, ECF No. 12-4, PageID.565–566.) The police report includes at least two described beatings, one where Petitioner beat the victim with an open hand, (Exh. OO, ECF No. 12-13, PageID.1865), which is not tied to a particular date or event, and another where Petitioner beat the victim with a belt, (*Id*. PageID.1866), which is—like the trial testimony—tied specifically to the "gruesome photograph." If counsel had attempted to impeach Olivia, as Petitioner contends counsel should have, the jury would have simply learned that she was describing two separate beatings.

---

[13] *See supra* Part II.

Petitioner also contends that counsel should have highlighted the inconsistency between Hollie's description of the beating that occurred in the days before the bruising reflected in the "gruesome photograph" and Olivia's description of the beating that occurred in the days before the bruising in the "gruesome photograph." Hollie testified that Petitioner slapped the victim as many as 30 times with his hand; Olivia testified that Petitioner hit the victim on the head repeatedly with a belt. Petitioner, again, presumes that his housemates are describing the same beating. He ignores the perfectly reasonable inference that the beatings the housemates witnessed were, in fact, different beatings. If counsel had attempted to impeach Hollie or Olivia with this purported inconsistency, the jury could have learned that they were describing two different beatings, both of which contributed to the extensive bruising reflected in the "gruesome photograph."

Petitioner has failed to establish that counsel's decision to forego the impeaching inquiries urged by Petitioner was professionally unreasonable or prejudicial. Therefore, he has failed to demonstrate that the state court's rejection of Petitioner's ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law.

Finally, Petitioner suggests that the multiple instances of professionally unreasonable conduct of his counsel cumulated to prejudice him. The Court must consider the cumulative effect of multiple instances of professionally unreasonable conduct because "[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)). "Thus, examining an ineffective assistance claim requires the court to consider 'the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Lundgren v. Mitchell*,

440 F.3d 754, 770 (6th Cir. 2006)). However, as discussed above, the Court has concluded that Petitioner has failed to demonstrate that counsel was constitutionally deficient in any way. Thus, because Petitioner's individual claims of professionally unreasonable conduct lack merit, he cannot show that any cumulation of such conduct violated his constitutional rights. *See Seymour*, 224 F.3d at 557.

     **E.**    **Ineffective assistance of appellate counsel (habeas ground V)**

The *Strickland* test applies to claims of ineffective assistance of appellate counsel as well; but counsel's obligations on appeal are different. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

Petitioner argues that appellate counsel rendered ineffective assistance because she failed to raise the ineffective assistance of trial counsel claim that Petitioner put before the court in his motion for relief from judgment. The trial court concluded that Petitioner's ineffective assistance of appellate counsel claim lacked merit: "[s]ince the Court has found that defendant's trial counsel was not ineffective, it logically follows that his appellate counsel would not have been ineffective

if s/he had failed to raise the issue of ineffective assistance of trial counsel on appeal." (Ottawa Cnty. Cir. Ct. Op. & Order, ECF No. 17-5, PageID.2048.) That determination is entirely consistent with clearly established federal law. *See, e.g.*, *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Therefore, Petitioner is not entitled to habeas relief on this claim.

## V.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   September 20, 2022                    /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge